# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 14-0824** (Greenbrier County 11-F-134)

**David Ray Bradley,**
**Defendant Below, Petitioner**

**FILED**

**May 23, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner David Ray Bradley, by counsel J. Steven Hunter, appeals the Circuit Court of Greenbrier County's July 8, 2015, order sentencing him to a term of incarceration of two to ten years following his conviction, by jury, of one count of abuse of an incapacitated adult causing bodily injury. The State, by counsel David A. Stackpole, filed a response. On appeal, petitioner alleges that the circuit court erred in admitting his statement to law enforcement and in denying his motion to dismiss.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2011, Corporal Roger Baker of the Greenbrier County Sheriff's Department received a call that a victim had been taken to the emergency room with stomach pains. According to the report, the victim had to undergo emergency surgery because something had been inserted into his anus. Corporal Baker spoke with hospital staff who indicated the trauma had to have occurred within the preceding twenty-four hours. According to Corporal Baker, the victim was a blind person who was "mentally delayed" and required round-the-clock supervision and care. Corporal Baker then participated in an interview of the victim, who stated that "David hurt." Thereafter, Corporal Baker identified all the individuals who worked for the agency providing the victim's care who were on shift in the preceding twenty-four hours, including petitioner. According to Corporal Baker, he spoke with two other caregivers before speaking to petitioner. Per discussions with those other caregivers, the victim was unlikely to have inflicted the injury upon himself. Both of those caregivers also informed the officer that they had observed bruising to the victim's penis and inner thighs over the past year.

On August 30, 2011, Corporal Baker spoke to petitioner at his residence and asked if petitioner could meet him at the sheriff's department the following day. Petitioner agreed. Upon arrival, Corporal Baker indicated that the sheriff's department "had an interview room at

1

Lewisburg PD" and asked petitioner if they could talk there. Petitioner again agreed. Corporal Baker began the interview by asking petitioner if he came in voluntarily and was willing to speak to him, to which petitioner responded in the affirmative. Petitioner initially denied having injured the victim, but later indicated that the victim attacked him and he had to physically restrain the victim. Petitioner then indicated that something, like a plunger or commode brush, may have gone up the victim's anus while they wrestled. Corporal Baker then stated that petitioner would have to know exactly what went in the victim's anus because he would have helped remove it. Petitioner then stated that the victim fell on the commode brush, it went up his anus, and then he removed it on his own. After indicating that he did not believe petitioner's story, Corporal Baker asked petitioner if there was a time he inserted the brush into the victim's anus. Petitioner then said that he "probably did it out of rage." Corporal Baker then asked petitioner to recount the story from the beginning, at which point petitioner explained that he grabbed the commode brush and was going to hit the victim with it, but instead it went up his anus unintentionally. Corporal Baker then left the room and conferred with a prosecutor. Upon returning, Corporal Baker advised petitioner of his *Miranda* warnings and obtained a written acknowledgment on a *Miranda* form.[1] After reviewing his rights, petitioner stated that he voluntarily waived them, consented to continuing the interview, and was not placed under arrest or formally charged with any crime at that time. Petitioner was not physically restrained and was free to leave. Shortly thereafter, petitioner requested to speak with an attorney and Corporal Baker told him he was free to leave, at which point the interview ended. In total, the interview lasted approximately one hour and twenty-seven minutes.

In October of 2011, petitioner was indicted on one count of first-degree sexual assault and one count of abuse of an incapacitated adult causing serious bodily injury. Thereafter, petitioner filed a motion to suppress his statement and argued that Corporal Baker failed to provide him his *Miranda* rights prior to any questioning. According to petitioner, the questioning was custodial because Corporal Baker deprived him of his freedom by requiring him to appear for questioning and he was under arrest the moment he arrived for questioning. The State also filed a motion to determine the admissibility of certain evidence.

In November of 2012, the circuit court held a suppression hearing and ultimately found that petitioner's statement was admissible because it was made freely and voluntarily. Later that month, the circuit court held a status hearing, during which the State indicated that there was a question as to the commode brush's location after it was sent to the State forensic laboratory. Petitioner then argued that the brush was a critical piece of evidence and moved to dismiss the matter because the brush could have been tested for DNA. The circuit court inquired as to how such testing would be helpful, and petitioner responded that DNA could have established that someone else used the brush. Following the hearing, petitioner filed a motion to dismiss or, alternatively, a motion in limine regarding the brush. Petitioner argued that the brush was not available for him to test and that it could have contained exculpatory DNA evidence that "may very well have exonerated" him.

In December of 2012, depositions regarding the lost commode brush were held. Both Corporal Baker and Sheriff James Childers were deposed and testified to the issues surrounding

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

the brush's transport to the State forensic laboratory. Thereafter, petitioner's jury trial commenced in December of 2013 and lasted three days. Ultimately, the charge of first-degree sexual assault was dismissed, though the jury found petitioner guilty of the charge of abuse of an incapacitated adult causing bodily injury. After trial, petitioner filed a motion for a new trial and to set aside the verdict based, in part, upon the denial of his motion to dismiss the indictment because of the lost commode brush and the circuit court's failure to suppress his statement. The circuit court held a hearing on this motion in March of 2014 and denied the same. In July of 2014, the circuit court sentenced petitioner to a term of incarceration of two to ten years following his conviction of one count of abuse of an incapacitated adult causing bodily injury. It is from the sentencing order that petitioner appeals.

We have previously set forth the following standard of review:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). Upon our review, we find no error in the circuit court's rulings below.

To begin, we find no error in the circuit court's denial of petitioner's motion to dismiss the indictment. We have previously held that

> [t]his Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*. However, in addition to the *de novo* standard, where the circuit court conducts an evidentiary hearing upon the motion, this Court's "clearly erroneous" standard of review is invoked concerning the circuit court's findings of fact.

Syl. Pt. 1, *State v. Grimes*, 226 W.Va. 411, 701 S.E.2d 449 (2009). On appeal, petitioner alleges that the circuit court erred in denying his motion to dismiss upon his claim that the State lost exculpatory evidence in the form of the toilet brush at issue. Petitioner makes a broad claim that the evidence in question may have proven exculpatory, but does not specify how DNA testing could have exonerated him, nor does he address the fact that his admission to police was sufficient to support his conviction.

In addressing lost evidence, this Court has previously stated that

> "[w]hen the State had or should have had evidence requested by a criminal defendant but the evidence no longer exists when the defendant seeks its production, a trial court must determine (1) whether the requested material, if in the possession of the State at the time of the defendant's request for it, would have been subject to disclosure under either West Virginia Rule of Criminal Procedure

3

16 or case law; (2) whether the State had a duty to preserve the material; and (3) if the State did have a duty to preserve the material, whether the duty was breached and what consequences should flow from the breach. In determining what consequences should flow from the State's breach of its duty to preserve evidence, a trial court should consider (1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence produced at the trial to sustain the conviction." Syl. pt. 2, *State v. Osakalumi*, 194 W.Va. 758, 461 S.E.2d 504 (1995).

Syl. Pt. 10, *State v. Davis*, 232 W.Va. 398, 752 S.E.2d 429 (2013). Turning to the third factor of this test, it is clear the circuit court did not err in denying petitioner's motion to dismiss because such a consequence was not necessary in light of the minimal probative value of the evidence in question.

In the circuit court, petitioner argued that he should be entitled to dismissal because he could have obtained DNA testing of the evidence in question and because he claimed such testing could provide exculpatory evidence. The Court, however, does not agree. Assuming, arguendo, that DNA from other individuals was found on the brush, such evidence would not prove exculpatory, given that the mere presence of another individual's DNA on the brush does not establish that someone other than petitioner inserted the brush into the victim's anus. Moreover, the other evidence introduced at trial, including petitioner's own statement wherein he admitted to inserting the brush into the victim's anus, was more than sufficient to support his conviction. Lastly, it is clear that the investigating officers did not engage in any negligence or bad faith in regard to the lost evidence. Both Corporal Baker and Sheriff Childers testified to the evidence's chain of custody and established that they secured the brush's transport and transfer to the State forensic laboratory, at which point the evidence was misplaced. Based upon these factors, it is clear that the circuit court did not err in denying petitioner's motion to dismiss.

Next, the Court finds no error in regard to the circuit court admitting petitioner's statement to police. We have previously stated that

"[w]hen reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syl. pt. 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

*Id.* at 403, 752 S.E.2d at 434, Syl. Pt. 6. Further,

"[a] trial court's determination of whether a custodial interrogation environment exists for purposes of giving Miranda warnings to a suspect is based upon whether a reasonable person in the suspect's position would have considered

4

his or her freedom of action curtailed to a degree associated with a formal arrest."
Syl. pt. 1, *State v. Middleton*, 220 W.Va. 89, 640 S.E.2d 152 (2006), *overruled on other grounds by State v. Eilola*, 226 W.Va. 698, 704 S.E.2d 698 (2010).

*Id.*, Syl Pt. 8. Petitioner's argument on this issue is based entirely on an unsupported allegation that his interview with Corporal Baker constituted a custodial interrogation. However, petitioner provides no evidence in support of this argument and admits that he both freely agreed to appear for the interview and was plainly told that he was free to leave at any time during the discussion. In fact, upon admitting to the crime in question and ultimately being advised of his *Miranda* rights, petitioner waived the same and agreed to continue the interview. A short time after, however, petitioner requested a lawyer, at which point Corporal Baker again told petitioner he was free to leave and the interview ended. Based upon our review, it is clear that the circuit court did not err in admitting petitioner's statement based upon this evidence and the fact that a reasonable person in petitioner's position would not have considered his or her freedom of action curtailed to a degree associated with a formal arrest.

For the foregoing reasons, the circuit court's July 8, 2015, sentencing order is hereby affirmed.

Affirmed.

**ISSUED**: **May 23, 2016**

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II